# EXHIBIT A

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 2 of 41 PageID #: 13

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

CHRISTINA AURIEMMA and THERESA EISENBACH,

*Plaintiff,*

-against -

EXXONMOBIL OIL CORPORATION, BP PRODUCTS NORTH AMERICA, INC., CHEVRONTEXACO, INC., PEERLESS IMPORTS INC., ROUX ASSOCIATES INC. and JOHN and JANE DOES 1 through 100,

*Defendants.*

Index No. _____

**SUMMONS and VERIFIED COMPLAINT**

**Trial by jury is desired in the County of Kings**

**Venue is designated pursuant to CPLR §§ 503(a), (c), & 507 in that plaintiffs reside in this county, at least one corporate defendant has its principal office in this county, and that the judgment demanded would affect the possession and use or enjoyment of real property situated in the County of Kings.**

---

**TO THE ABOVE-NAMED DEFENDANTS:**

You are hereby summoned and required to serve upon the plaintiffs' attorneys an answer to the complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:  New York, New York
        August 27, 2020

Yours, etc.,

MARC J. BERN & PARTNERS, LLP
*Attorneys for Plaintiffs*

BY:  _____
     LEIGH BERNSTEIN
     60 East 42nd Street – Suite 950
     New York, New York 10165
     (212) 702-5000

Case 1.21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 3 of 41 PageID #: 14

To:

**EXXONMOBIL OIL CORPORATION**
Registered Agent
c/o The Prentice-Hall Corporation System
80 State Street
Albany, NY 12207


**BP PRODUCTS NORTH AMERICA INC.**
**(f/k/a Amoco Oil Company)**
Registered Agent
c/o The Prentice-Hall Corporation System
80 State Street
Albany, NY 12207


**BP CORPORATION AMERICA, INC.**
**(f/k/a BP Amoco Corporation)**
c/o The Prentice-Hall Corporation System
80 State Street
Albany, NY 12207


**CHEVRONTEXACO CORPORATION**
c/o Corporation Service Company
80 State Street
Albany, New York 12207


**PEERLESS IMPORTERS INC.**
16 Bridgewater Street
Brooklyn, New York, 11222


**ROUX ASSOCIATES INC.**
**Corporate Headquarters**
209 Shafter Street
Islandia, New York 11749


JOHN and JANE DOES 1 through 100

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| CHRISTINA AURIEMMA and THERESA EISENBACH, | Index No. _____ |
| *Plaintiff,* | |
| -against - | |
| | **VERIFIED** |
| | **COMPLAINT** |
| EXXONMOBIL OIL CORPORATION, BP PRODUCTS NORTH AMERICA INC., CHEVRONTEXACO INC., PEERLESS IMPORTS INC., ROUX ASSOCIATES INC. and JOHN and JANE DOES 1 through 100, | |
| *Defendants.* | |

Plaintiffs CHRISTINA AURIEMMA and THERESA EISENBACH, by and through their

attorneys, MARC J. BERN & PARTNERS, LLP, complaining of defendants, respectfully allege

the following upon information and belief, except as to the allegations, which pertain to the

plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief are based

upon; *inter alia*, the investigation made by and through their attorneys. Plaintiffs, by and through

their attorney MARC J. BERN & PARTNERS, LLP as and for their Complaint, hereby allege:

1.   At all times hereinafter mentioned the Plaintiff CHRISTINA AURIEMMA was a

resident and/or the owner of certain property located 672 Humboldt Street, Brooklyn, NY 11222,

in the Greenpoint area of the County of Kings, City and State of New York.

2.   At all times hereinafter mentioned the Plaintiff THERESA EISENBACH was a resident

and/or the owner of certain property located 16 Apollo Street, Brooklyn, NY 11222, in the Greenpoint

area of the County of Kings, City and State of New York.

3.   Plaintiffs CHRISTINA AURIEMMA and THERESA EISENBACH, at the time of

sustaining the injuries complained of herein, have been the owners, lessees and/or occupants of certain

1

Case 1:21-cv-05508-RPK-PK Document 1-2 Filed 10/04/21 Page 5 of 41 PageID #: 16

real property located near the real property and facilities previously and currently known and used as the ExxonMobil Brooklyn Terminal and/or ExxonMobil Kingsland Avenue ("TERMINAL"), the BP Brooklyn Terminal ("BP TERMINAL") located at or about 315 Norman Avenue, and the real property formerly owned by the corporation known as Texaco Inc. ("TEXACO PROPERTY") located at or about 16 Bridgewater Street.

4.  Due to the negligent, willful, and/or wanton actions of the various defendants herein named, millions of gallons of oil and oil products have been released into the ground and Defendants have continued to this date to fail to remove the contamination that migrated and continues to migrate onto plaintiffs' property causing plaintiffs CHRISTINA AURIEMMA and THERESA EISENBACH to suffer ongoing injuries and damages to their person and property.

5.  Plaintiffs CHRISTINA AURIEMMA and THERESA EISENBACH have suffered foreseeable injuries and damages as a proximate result of these defendants' actions and failures to act in that their properties have been damaged and trespassed upon; their property rights have been violated, and the value of their homes have been adversely affected and the plaintiffs and their families have been exposed to toxic chemicals.

6.  Plaintiffs CHRISTINA AURIEMMA and THERESA EISENBACH bring suit against each defendant named herein for each cause of action listed herein and seeks general damages directly and foreseeably resulting from defendants' actions, consequential damages, and exemplary or punitive damages as allowed by law and in an amount to be proved at trial.

7.  Upon information and belief, defendant EXXONMOBIL OIL CORPORATION is a New Jersey corporation with its corporate headquarters in Irving, Texas.

8.  The EXXONMOBIL TERMINAL is owned, operated, managed, and/or controlled by defendant EXXONMOBIL OIL CORP.

2

Case 1:21-cv-05508-RPK-PK Document 1-2 Filed 10/04/21 Page 6 of 41 PageID #: 17

9. Defendant EXXONMOBIL, at all times relevant herein, was and is, authorized to do business and is doing business in the State of New York.

10. Defendant EXXONMOBIL owned, operated, managed, controlled and/or was liable for toxic pollution emanating from the EXXONMOBIL TERMINAL and properties located in Brooklyn, New York, currently and formerly owned, occupied, and controlled by defendant EXXONMOBIL.

11. Upon information and belief, defendant BP PRODUCTS NORTH AMERICA INC. is an Indiana corporation with its corporate headquarters in Warrenville, Illinois.

12. The BP TERMINAL is owned, operated, managed, and/or controlled by defendant BP.

13. The BP TERMINAL was formerly owned, operated, managed and/or otherwise controlled by defendant EXXONMOBIL and/or its corporate predecessor Mobil Oil Company.

14. Defendant BP at all times relevant herein, was and is, doing business in the State of New York.

15. Defendant BP owned, operated, managed, controlled and/or was liable for toxic pollution emanating from operating the BP TERMINAL in Brooklyn, New York.

16. Defendant CHEVRONTEXICO, INC., was incorporated in Delaware on August 26, 1926. The designated agent for service of process in New York is Corporation Service Company located at 80 State Street, Albany, New York 12207.

17. Texaco Inc. is currently a holding company which manages legacy liabilities for operations prior to 2001 when it became a subsidiary of Chevron Corporation.

18. Upon information and belief, defendant PEERLESS IMPORTERS, INC. ("PEERLESS") is a New York Corporation with its corporate headquarters and/or principal place of business located at 16 Bridgewater Street, Brooklyn, New York, 11222.

19.    Defendant PEERLESS currently owns, possesses, controls, and/or otherwise occupies the TEXACO PROPERTY.

20.    During the time that the TEXACO PROPERTY was owned, possessed, controlled and/or occupied by defendant PEERLESS, the oil spill and/or ground contamination discussed herein occurred, and at least some of the oil and/or hazardous materials were spilled or released on and from the TEXACO PROPERTY.

21.    At all times relevant herein defendant PEERLESS was and is, authorized to do business and is doing business in the State of New York, and defendant PEERLESS owned, operated, managed, controlled and/or was liable for toxic pollution emanating from the TEXACO PROPERTY located in Brooklyn, New York.

22.    Upon information and belief, defendant ROUX ASSOCIATES INC. ("ROUX") is a New York Corporation with its corporate headquarters in Islandia, New York.

23.    Defendant ROUX by contract, or gratuitously, undertook to test, evaluate, remediate, eliminate, contain, and/or clean-up the oil and oil products spilled or released by the other defendants.

24.    Defendant ROUX has acted negligently or otherwise wrongfully in testing, evaluating, remediating, eliminating, containing, and/or cleaning-up oil and oil products.

25.    Defendant ROUX has sought and received compensation for undertaking such actions.

26.    At all times relevant herein defendant ROUX was and is, authorized to do business and is doing business in State of New York.

27.    Upon information and belief, defendants JOHN and JANE DOES 1 through 100, inclusive, and each of them ("DOE DEFENDANTS"), are corporations or other entities and/or individuals organized and existing under and by virtue of one of the states of the United States, or by

4

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 8 of 41 PageID #: 19

a foreign state and/or country, and authorized to do business and doing business in the State of New York.

28.     Plaintiffs are unaware of the true names and capacities whether individual, corporate, associate, or otherwise, of DOE DEFENDANTS sued herein as DOES 1 through 100, inclusive, and therefore sue said defendants by such fictitious names. Plaintiffs will seek leave of the court to amend this complaint to allege the true names and capacities of said fictitiously named defendants when the same have been ascertained. Said defendants are sued as principals, and all of the acts performed by them as agents, servants and employees were performed within the course and scope of the authority and employment.

29.     Upon information and belief, some or all of the defendants named herein and the DOE DEFENDANTS are the agent, partner, manager, or controlling entity of the other defendants, and in doing the things hereinafter alleged each were and are acting within the course and scope of such agency, partnership, management or control with the full knowledge and consent of the other defendants, and that at all times all agents of defendants acted with the advance knowledge or under the direction or with the ratification of corporate officers who had the ability to bind the corporation.

30.     Upon information and belief, each of the defendants are responsible, negligently, intentionally and/or in some actionable manner, for the events and happenings referred to herein, and caused and continue to cause injuries and damages legally thereby to plaintiffs, as alleged, either through each defendant's own conduct or through the conduct of its agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing them injury, or in some other actionable manner.

31.     At the time of defendants' acts complained of herein, plaintiffs, an individual, at all relevant times, have or had owned property, and/or have or had resided, within the vicinity of the

5

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 9 of 41 PageID #: 20

EXXONMOBIL TERMINAL and BP TERMINAL. Plaintiffs have each suffered injury and/or damage as a result of defendants' actions.

32.     Upon information and belief, the Greenpoint section of Brooklyn, New York, has a long history of supporting both industrial and residential property uses. This industrial history includes oil or petroleum refineries and storage.

33.     One such company that engaged in the business of refining and storing oil was Standard Oil. Standard Oil owned the Greenpoint property including but not limited to the real property bordered on the west by N. Henry Street, on the northeast and east by Newtown Creek, and on south by Norman Avenue. This property includes the property referred to herein as the EXXONMOBIL TERMINAL. After Standard Oil was dissolved under anti-trust laws, and after a series of mergers, the business owning this real property was known as Mobil Oil Company ("Mobil").

34.     Mobil sold portions of this land to other companies in the 1960's but retained the real property identified herein as the EXXONMOBIL TERMINAL. Mobil is now known as the defendant referred herein as EXXONMOBIL and said defendant still owns, occupies and controls the EXXONMOBIL TERMINAL and, until approximately 1994, used the EXXONMOBIL TERMINAL for petroleum bulk storage.

35.     Another company engaged in the business of refining and storage of oil and petroleum products was Amoco Oil Corporation. Amoco Oil Company purchased property in Greenpoint from Mobil. This property is bordered on the east by Newtown Creek and the south by Norman Avenue. This property has been owned, possessed, and controlled by Amoco Oil Company since that purchase, though Amoco Oil Company is now known as BP PRODUCTS NORTH AMERICA INC. (referred herein as DEFENDANT BP) after merging with British Petroleum. The real property and facility located on such real property is referred to herein as the BP TERMINAL.

6

36.     A third relevant company engaged in the business of refining and storage of oil and/or petroleum in Greenpoint was Paragon Oil. Paragon Oil owned and operated an oil refinery and storage facility on real property previously identified herein as the TEXACO PROPERTY. Texaco Inc. purchased Paragon Oil and with it, the TEXACO PROPERTY. Thereafter, Texaco owned the TEXACO PROPERTY and operated a business refining and/or storing petroleum and/or oil.

37.     Defendants EXXONMOBIL, BP, PEERLESS, and DOES 1-100 (collectively, "defendants") so negligently stored, transported, and/or disposed of, or willfully, wantonly, and intentionally spilled, disposed of, or otherwise released the oil, petroleum, petroleum products, oil additives, petroleum additives, petroleum product additives, gasoline, gasoline additives, including but not limited to lead, benzene, toluene, xylene, kerosene, refinery oil, solvents, and other hazardous and toxic substances and chemicals (collectively referred to as "oil and oil products") so as to cause severe contamination of the ground, soil, groundwater, and/or aquifer, and/or said defendants own or owned property upon which such actions and/or results occurred.

38.     In 1978, the Coast Guard discovered oil seeping out of the banks of Newtown Creek in the area of defendants' properties in Brooklyn. The Coast Guard launched a formal investigation and hired the firm Geraghty & Miller ("G&M") to evaluate the spill.

39.     G&M spent a year investigating the spill to determine its nature and origin. G&M estimated that a 17 million-gallon plume of oil and oil products (the "plume") extended under 55 acres of commercial, industrial, and residential Greenpoint including the TERMINALS and TEXACO PROPERTY. The Coast Guard subsequently stated that the plume may contain up to 30 million gallons of oil and oil products.

40.     According to G&M, the spill likely migrated and would continue to migrate with groundwater and by following underground conduits such as sewer pipes and the ancient bed of the tidal creek.

41.     G&M concluded that the majority of the spill most likely originated either at defendant EXXONMOBIL'S EXXON TERMINAL or defendant BP TERMINAL.

42.     At or about the time that the oil and oil products were spilled, disposed of, or otherwise released into ground, the TEXACO PROPERTY was being used to store diesel fuel, kerosene, gasoline, fuel oil, etc., at a capacity of over six million gallons.

43.     According to information released by defendant ROUX in 2005, there is evidence that the source of the oil and oil products residing under the TEXACO PROPERTY and migrating off of the TEXACO PROPERTY is the storage units formerly owned, maintained, and used by Paragon Oil on the TEXACO PROPERTY.

44.     In the decade that followed the 1979 report, after the defendants received formal notice of the dangerous conditions created by their actions, little action, if any, was taken by defendants to eliminate, correct, and or remedy the plume or prevent its continued migration.

45.     After much delay, in 1990, defendant EXXONMOBIL entered into an agreement to take action to remediate "on- and off-site" plumes. Defendant EXXONMOBIL continued to delay and fail to take action with respect to recovering oil and oil products that had migrated off the EXXONMOBIL TERMINAL, not even starting its offsite remediation system until 1995.

46.     Defendant EXXONMOBIL has continued to make promises to the State environmental authorities and to the people residing near the plume that it would diligently pursue a cleanup, but those promises have been broken.

47.     Defendant ROUX has undertaken to evaluate, remediate, eliminate, contain, and/or clean-up the oil and oil products in the plume.

48.     Over the several years since defendant ROUX undertook such actions and responsibilities, ROUX has delayed, failed to act, and/or failed to act in a reasonably diligent manner to perform such actions and responsibilities.

8

49.     Defendant ROUX was responsible to properly study the contamination and design and implement plans for cleanup but did so in a negligent or otherwise wrongful manner by, upon information and belief, among other things, designing sampling plans in a manner that avoided revealing contamination and improperly or ineffectively remediating.

50.     Defendant ROUX's past and continued failure to take reasonable actions to remediate, eliminate, contain, and/or clean-up the oil and oil products has caused and continues to cause plaintiffs harm, injury and damages.

51.     Neither Texaco Inc., nor any subsequent owner or lessee of that property has taken any significant actions to eliminate, correct, or remedy the oil and oil products on the TEXACO PROPERTY.

52.     Defendant PEERLESS has not taken any significant actions to eliminate, correct, or remedy the oil and oil products on its property.

53.     The remediation plans, if any, set forth by defendants were and are inadequate and insufficient given size of the spill and the present and historical migration. Defendants have failed to exercise reasonable care to eliminate, correct, and/or remedy the dangerous condition created by them and/or located upon their land.

54.     Defendants have further intentionally delayed and chosen courses of action patently inadequate and unreasonable given the circumstances presented. The actions chosen and taken by defendants were with knowledge that such delay and minimal action would cause the oil and oil products to disburse and migrate off of the TERMINALS and TEXACO PROPERTY and onto plaintiffs' land and property. These actions have been undertaken with actual malice and in wanton and willful and/or reckless disregard for plaintiffs' rights, health, and property.

55.     As a result of defendants' negligent, willful, and/or wanton storage, disposal, release of the oil and oil products and hazardous and toxic substances into soil and/or groundwater, and/or

9

the subsequent and continuing failure to remediate or take reasonable action to remediate the release and migration of said substances, there is contamination located in or about various areas and neighborhoods of the Greenpoint, as well as surrounding communities, which has migrated and continues to migrate throughout these areas and "neighborhoods and onto the properties of plaintiffs at dangerous levels, including at concentration levels in excess of federal and/or state regulatory limits. In addition, defendants' failure to properly investigate, test and remediate the hazardous and toxic substances on their own real properties continues to allow dangerous chemicals to migrate onto plaintiffs' properties.

56.     The presence of defendants' hazardous materials including the oil and oil products in plaintiffs' environment and on plaintiffs' properties has resulted in permanent and continuing harm to plaintiffs' persons and properties.

57.     As the oil and oil products migrate from defendants' property across other properties and onto plaintiffs' properties, said oil and oil products continually comes into contact with, mix with, and react to otherwise benign substances, materials, and chemicals. Such contacts, mixtures, and reactions foreseeably result in new, different, and/or additional hazardous materials entering upon, trespassing, and interfering with the rights of plaintiffs, as a result of defendants' actions.

58.     Further, as the oil and oil products age and decompose, they create byproducts and/or release noxious gases, fumes, and odors including methane. Such by-products including methane rising through the soil becomes trapped under foundations, streets, and driveways and creates a real and foreseeable risk of ignition and/or explosion, as well as exposures to harmful toxins and odors.

59.     According to reports published by the New York State Department of Environmental Conservation on January 25, 2006 and by defendant ROUX ASSOCIATES on or about February 6, 2006, results from sampling tests conducted on properties on and around the plume. Said sampling results evidenced new information regarding elevated levels of methane and benzene present in the

soil above the groundwater plume and potentially causing vapor intrusions into neighboring properties and into the ambient air. News of these results and this new information was first disseminated on or about July 13, 2005. This new information became known to plaintiffs at some point thereafter.

60.     On or about September 16, 2005, the New York State Department of Environmental Conservation announced its approval of a work plan from defendant EXXONMOBIL to sample soil gas at approximately 16 additional points in the Greenpoint area. The purpose of the sampling was to determine if vapors from the plume are impacting indoor air.

61.     Defendant EXXONMOBIL started the investigation on or about September 19, 2005. Plaintiffs have not received the results of such sampling. The sampling program, while needed to assist in determining the harm being done by defendants, has a devaluing impact on plaintiffs' properties.

62.     At all times prior to September 2005, defendants have stated and maintained that the plume and/or the oil and oil products were not affecting plaintiffs' properties, air, or health.

63.     Due to the defendants' negligent handling of the oil and oil products, defendants' failure to avoid spilling, unsafe disposal, and/or release of said toxic substances into environment, failure to adequately warn plaintiffs of the condition of their property, and failure to act reasonably in eliminating, correcting, and/or remediating the condition, defendants, and each of them, are obligated to institute reasonable care and compensation plans to halt, prevent and correct injuries to all plaintiffs, their physical and mental well-being, their real and personal property, and their economic interests.

64.     Due to their proximity to the TERMINALS and TEXACO PROPERTY, plaintiffs would be, and are foreseeably and unnecessarily injured by the discharge of defendants' oil and oil products, failure to warn, and failure to exercise reasonable care to eliminate, correct, and/or remediate

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 15 of 41 PageID #: 26

the dangerous condition created and maintained by defendants on and around the TERMINALS and TEXACO PROPERTY.

65.     Defendants knowingly and negligently released or allowed to be released toxic contaminants into the environment; and/or continue to allow the migration of toxic chemicals into the environment on and around plaintiffs' properties.

66.     Plaintiffs were and are exposed to these toxic contaminants by ingestion, inhalation, and dermal exposure.

67.     Plaintiffs have been and continue to be exposed to these toxic contaminants through dust dispersing through the air into plaintiffs' properties and surrounding communities; through the migration of the contaminants through the water table and groundwater which percolates up through the soil into the soil and the environment and into the plaintiffs' homes through the vapor intrusion pathway. In addition, plaintiffs have been exposed to these toxic contaminants through contact with the soil.

68.     The defendants intentionally and/or negligently failed to adequately warn or advise plaintiffs and other members of the public as to the nature, extent, composition, effects, and location of the contamination, the fact that plaintiffs and their property were being exposed to the contamination, that the nature of the contaminants and risks could change over time, and that exposure to the contamination could cause adverse health effects.

69.     The numerous egregious actions and incidents occurring at and near the TERMINALS by defendants constitute intentional and/or negligent breach of their duty of reasonable care, and violations of state law.

70.     Defendants, through their negligent and/or reckless acts, have repeatedly and unreasonably invaded each plaintiffs' rights to possession and undisturbed occupancy of their residences, have repeatedly trespassed by causing migration of "toxic contaminants onto plaintiffs'

12

real properties, have caused continuing damage to plaintiffs' persons and real and personal properties and have caused continuous injury to the land values of those plaintiffs holding real property due to devaluation, resulting from negative publicity that has unfairly injured their competitive status in home equity- and re-sale value in relation to real property owners similarly situated in areas outside of the areas affected by the plume and contamination.

71.    Each and every plaintiff has suffered and continues to suffer various types of injuries due to the acts of the defendants as herein before alleged. Plaintiffs, and each of them, have, due to the acts of all the defendants, suffered and continue to suffer sudden, repeated and continual invasions of their rights of possession and to undisturbed occupancy of their residences and living areas.

72.    The plaintiffs who own real property have, due to the acts of the defendants, suffered and continue to suffer stigma damages and injury due to the creation of an unfair, competitive disadvantage by way of diminution of property value as compared with similarly situated unaffected real property. This injury has resulted, in part, from the numerous public interest reports in the printed press concerning the contamination.

73.    Due to the negligent and/or intentional acts of each of the defendants, plaintiffs have suffered and continue to suffer from the damage to the air, water and subterranean soils around the TERMINALS, the TEXACO PROPERTY, and plaintiffs' homes. This dilemma further concerns plaintiffs, in light of the anticipated risk of potentially injurious and unhealthy vapors escaping through the surface of residential grounds and adjacent private property.

74.    Plaintiffs have, due to the acts of each of the defendants, suffered and continue to suffer from the general diminution in the aesthetic qualities of their homes and the area in which they reside, caused by the total compounded effect of all of the above-described circumstances, causing injury to the visual, audible and physically sensible environment of the vicinity surrounding the TERMINALS and TEXACO PROPERTY.

13

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 17 of 41 PageID #: 28

75.     In order to compensate plaintiffs for damages suffered due to defendants' acts, each plaintiff requires, among other things, that defendants, and each of them, pay the past and future costs of obtaining necessary medical care, toxicological examinations and diagnoses, and any other medical monitoring necessary in order to ascertain and treat the nature and extent of the injuries suffered due to the contamination emanated from the PLUME, with plaintiffs retaining freedom of choice relative to choosing their experts. Many of these costs would not be covered by plaintiffs' health care insurers, and if covered, may unfairly result in increased premiums.

76.     Further, plaintiffs seek compensation for: the diminution in the economic value of their personal and real property; residential soil and air space testing and monitoring; cleanup, removal and remediation of any and all contamination of plaintiffs' properties including the costs of investigation and testing of plaintiffs' properties; repairs to real property damaged by defendants; other damages; and attorneys' fees and costs as allowed by law.

77.     Further, plaintiffs seek injunctive relief as allowed by law and required by justice, including, but not limited to, an Order therein compelling the defendants to take specific actions to cleanup, remediate, and/or correct the plume.

78.     To the extent that defendants' oil and oil products have commingled, defendants are jointly and severally liable for the damages from contamination in this case.

### AS AND FOR A FIRST CAUSE OF ACTION
### SOUNDING IN NEGLIGENCE AS TO DEFENDANTS
### EXXONMOBIL, BP, TEXACO, PEERLESS, AND DOES 1 THROUGH 100

79.     Plaintiffs hereby repeat, reallege and reiterate each and every allegation in the paragraphs numbered 1 through 78 as if fully restated herein.

14

Case 1:21-cv-05508-RPK-PK Document 1-2 Filed 10/04/21 Page 18 of 41 PageID #: 29

80.     Defendants failed to employ reasonable care which a reasonably prudent person should use under the circumstances by storing, transporting, disposing of, or otherwise releasing into the ground between 17 and 30 million gallons of oil and oil products.

81.     Defendants, and each of them, owed plaintiffs a cognizable duty to exercise reasonable care in the storage, transportation, and disposal of the oil and oil products and the maintenance of their tools and equipment used for such acts.

82.     Upon learning of the release of the oil and oil products, defendants owed plaintiffs a duty to act reasonably to remediate, contain, and eliminate the spill before it injured plaintiffs and their property and/or to act reasonably to minimize the damage to plaintiffs and their property.

83.     Defendants breached that duty by failing to act reasonably in the storage, transportation, disposal and release of the oil and oil products. Further defendants failed to take reasonable, adequate, and sufficient steps or action to eliminate, correct, or remedy the spill after it occurred.

84.     Upon learning of the release of the oil and oil products, defendants owed plaintiffs a duty to timely notify plaintiffs that the aforementioned spills, in the vicinity of defendants' storage and refining facilities had occurred.

85.     Defendants breached that duty by failing to timely notify the plaintiffs of the spills of oil and oil related products in the vicinity of the defendants' storage and refining facilities, and, consequently, in the vicinity of plaintiffs' homes and rental properties.

86.     As a result of the defendants' breaches of their duty to timely notify the plaintiffs, the plaintiffs were forestalled from undertaking effective and immediate remedial measures and plaintiffs have expended and/or will be forced to expend significant resources to test, monitor, and remediate the effects of defendants' negligence for many years into the future.

INDEX NO. 516018/2020
Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 19 of 41 PageID #: 30

87. Defendants negligently breached their duties to the plaintiffs to ensure that their refining and storage facilities were safe and sufficiently secure as to prevent the release of oil and oil products into the environment surrounding their facilities and, consequently, surrounding the plaintiffs' homes and rental properties.

88. Defendants' breaches of their duties were direct and proximate causes of plaintiffs' damages and imminent, substantial and impending harm to the plaintiffs' homes, rental properties and health.

89. Defendants owed plaintiffs a duty to warn plaintiffs that the aforementioned spills in the vicinity of defendants' storage and refining facilities might occur.

90. Defendants breached that duty by failing to warn the plaintiffs of the likelihood of spills of oil and oil related products in the vicinity of the defendants' storage and refining facilities, and, consequently, in the vicinity of plaintiffs' homes and rental properties.

91. As a result of defendants' breaches of their duty to warn the plaintiffs, the plaintiffs were forestalled from undertaking effective and immediate remedial measures and plaintiffs have expended and/or will be forced to expend significant resources to test, monitor, and remediate the effects of defendants' negligence for many years into the future.

92. Plaintiffs suffered foreseeable injuries and damages as a proximate result of said defendants' negligent breach of their duties as set forth above. At the time defendants breached their duties to plaintiffs, defendants' acts and/or failures to act posed recognizable and foreseeable possibilities of danger to plaintiffs so apparent as to entitle plaintiffs to be protected against such actions or inactions.

93. Accordingly, plaintiffs seek damages from defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses sustained and to restore plaintiffs to their original position, including, but not

16

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 20 of 41 PageID #: 31

limited to the difference between the current value of their properties and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injuries to persons, and consequential damages flowing from the trespass which are the natural and proximate result of defendants conduct in an amount to be proved at trial. Upon information and belief such amount exceeds the jurisdictional amount of the lower courts.

### AS AND FOR A SECOND CAUSE OF
### ACTION SOUNDING IN NEGLIGENCE *PER SE*

94.     Plaintiffs hereby repeat, reallege and reiterate each and every allegation in the paragraphs numbered 1 through 93 as if fully restated herein.

95.     Defendants had a duty to comply with applicable laws, regulations and guidelines applicable to persons refining, managing, storing, using and distributing oil and oil products, including but not limited to New York's Navigation Law.

96.     Upon information and belief, defendants failed to operate their facilities in compliance with the applicable laws and regulations relevant to air, soil and water quality protection.

97.     These laws and regulations were intended for the protection of public and private health, safety, property and economic interests.

98.     Plaintiffs are members of the group(s) whose protection was intended by the drafters of such laws and regulations.

99.     These violations were a direct and proximate cause of the substantial damages and imminent, substantial and impending harm to plaintiffs' homes, rental properties and health.

100.    The risk of damages and the imminent, substantial and impending harm to the plaintiffs are precisely the types of injuries the applicable laws were designed to prevent.

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 21 of 41 PageID #: 32

101.   Violations of these laws and regulations thereby constitute per se negligence.  The amount of damages for the injuries will be established at the time of trial.

### AS AND FOR A THIRD CAUSE OF ACTION
### SOUNDING IN NUISANCE AS TO DEFENDANTS
### EXXONMOBIL, BP, TEXACO, PEERLESS, AND DOES 1 THROUGH 100

102.   Plaintiffs hereby repeat, reallege and reiterate each and every allegation in the paragraphs numbered 1 through 101 as if fully restated herein.

103.   Defendants have maintained and continue to maintain a condition on their properties that is an illegal burden and/or servitude on plaintiffs' properties.

104.   Defendants' wrongful actions in the creation of the contamination, maintenance of their land and the plume, and failure to reasonably abate, minimize or remediate the plume resulting in migration of oil and oil products onto plaintiffs' properties', creation of noxious fumes, gases and odors, and the risk of explosion, injures and/or annoys plaintiffs in their enjoyment of their legal rights and quality of life. Such conditions constitute an ongoing specific, particular and unique burden on the plaintiffs' persons and their property.

105.   Such wrongful acts by defendants in the maintenance and use of their land and failure to remediate the contamination was and is a foreseeable and proximate cause of injury, discomfort, annoyance, inconvenience, and/or damage to plaintiffs themselves and their property.

106.   Defendants' conduct is the legal cause of the intentional, unreasonable, negligent, and/or reckless invasion of plaintiffs' interests in the private use and enjoyment of their land. Such actions' tendency is to create danger and inflict injury upon person and property.

107.   Defendants' conduct in performing acts or failing to act has caused one or more substantial, unreasonable, and intentional interference with plaintiffs' right to use and enjoy their property as discussed above.

18

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 22 of 41 PageID #: 33

108.    Accordingly, plaintiffs seek general damages from defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses sustained by plaintiffs and to restore plaintiffs to their original position, including, but not limited to the difference between the current value of their properties and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injury to persons, and direct and consequential damages flowing from the nuisance and trespass which are the natural and proximate result of defendants conduct in an amount to be proved at trial.  Upon information and belief, such amount exceeds the jurisdictional amounts of the lower courts.

### AS AND FOR A FOURTH CAUSE OF ACTION
### SOUNDING IN PREMISES LIABILITY AS TO DEFENDANTS
### EXXONMOBIL, BP, TEXACO, PEERLESS, AND DOES 1 THROUGH 100

109.    Plaintiffs hereby repeat, reallege and reiterate each and every allegation in the paragraphs numbered 1 through 108 as if fully restated herein.

110.    Defendants, and each of them, acted with a lack of reasonable care which an ordinary prudent person would use under the circumstances which caused foreseeable damage to plaintiffs.

111.    Defendants EXXONMOBIL and DEFENDANT BP at all relevant times, did and continue to date, to own, occupy and control the real property referred to as the EXXONMOBIL TERMINAL and BP TERMINAL, respectively. Texaco, Inc. owned, occupied, and controlled the TEXACO PROPERTY at the time of the spill or release of OIL AND OIL PRODUCTS.  Defendant PEERLESS owns, occupies, and controls the TEXACO PROPERTY and has owned, occupied and controlled said property for several years.

19

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 23 of 41 PageID #: 34

112.    Defendants owned, occupied, controlled and/or still own, occupy and control their real property in such a way as to create and/or maintain and continue a dangerous and/or hazardous condition.

113.    At all times mentioned herein, defendants had knowledge and/or notice of the dangerous condition that the oil and oil products and the plume presented and failed to take reasonable acts to cleanup, correct, or remediate that condition.

114.    Plaintiffs have suffered foreseeable injury and damages proximately caused by the negligent creation and/or maintenance of the dangerous condition by defendants.  Defendants owed a duty to plaintiffs and those similarly situated to refrain from creating and/or maintaining a dangerous condition on defendants' properties that was reasonably foreseeable to injure plaintiffs and/or their real property.

115.    Additionally, defendants owed a duty to plaintiffs and those similarly situated to take reasonable action to eliminate, correct, or remedy any dangerous condition existing on defendants' property that was reasonably foreseeable to injure plaintiffs and/or plaintiffs' real property, and of which they had knowledge and/or notice.

116.    Additionally, defendants owed a duty to plaintiffs and those similarly situated to warn of a particular hazard arising out of a condition on defendants' property and/or defendants' maintenance of their property that was reasonably foreseeable to injure plaintiffs and/or their real property and of which defendants had knowledge and/or notice.

117.    Further, defendants owed a duty to plaintiffs and those similarly situated to exercise reasonable care and skill in the construction, maintenance, use or management of their property to prevent a structure, appurtenance, or condition thereon from endangering the neighboring premises and occupants.

Case 1:21-cv-05508-RPK-PK    Document 1-2    Filed 10/04/21    Page 24 of 41 PageID #: 35

118.    Defendants owed a duty to plaintiffs and those similarly situated to exercise reasonable care to keep dangerous substances such as oil and oil products from being discharged or allowed to escape, enter surrounding properties, and cause injury and damage.

119.    Defendants have breached these duties, and each of them, by negligently, willfully, and/or wantonly creating a dangerous condition on their property by allowing massive quantities of oil and oil products to be spilled, disposed of, or otherwise released into the ground, soil, groundwater and/or aquifer on their property. This dangerous condition is reasonably foreseeable to cause injury and damage to plaintiffs and their property due to the size and nature of the spill and the proximity of plaintiffs and their properties.

120.    Defendants have further breached their duty by continuing and maintaining this dangerous condition on defendants' property that was reasonably foreseeable to injure plaintiffs and/or their real property.

121.    Defendants breached their duty to plaintiffs and those similarly situated by failing to take reasonable actions under the circumstances to warn of a particular hazard arising out of a condition on defendants' property and/or defendants' maintenance of their property that was reasonably foreseeable to injure plaintiffs and/or their real property and of which they had knowledge and/or notice.

122.    Defendants breached their duty to plaintiffs and those similarly situated by failing to exercise reasonable care and skill in the construction, maintenance, use or management of their property to prevent a structure, appurtenance, or condition thereon from endangering the neighboring premises and occupants. Specifically, defendants negligently, willfully, and/or wantonly allowed massive quantities of oil and oil products to be spilled, disposed of, or otherwise released into the ground, soil, groundwater and/or aquifer on their property.

123. Defendants further breached their duty to plaintiffs and those similarly situated by failing to exercise reasonable care and by maintaining their property in such a condition as to allow, and fail to prevent, millions of gallons of oil and oil products degrade, mix with other chemicals, and escape from their property and enter onto and under plaintiffs' property. The above-described breaches endangered, injured, and damaged the neighboring premises and occupants. Such a dangerous condition is reasonably foreseeable to cause injury and damage to plaintiffs and their property.

124. Defendants' breach caused dangerous and hazardous oil and oil products onto plaintiffs' land and caused noxious gases, fumes and odors to emanate from their soil and homes. Accordingly, this breach has caused plaintiffs injury to their persons and property that is certain, substantial, and this resulting condition interferes with plaintiffs' physical comfort.

125. Accordingly, plaintiffs seek general damages from defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses sustained, and to restore plaintiffs to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injury to persons, and the direct and consequential damages flowing from the trespass and resulting condition which are the natural and proximate result of defendants conduct in an amount to be proved at trial. Upon information and belief, such amount exceeds the jurisdictional amount of all lower courts.

## AS AND FOR A FIFTH CAUSE OF ACTION
## SOUNDING IN TRESPASS AS TO DEFENDANTS
## EXXONMOBIL, BP, TEXACO, PEERLESS, AND DOES 1 THROUGH 100

126. Plaintiffs hereby repeat, reallege and reiterate each and every allegation in the paragraphs numbered 1 through 125 as if fully restated herein.

22

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 26 of 41 PageID #: 37

127.    Defendants EXXONMOBIL, BP, TEXACO, PEERLESS, and DOES 1-100's negligent, willful, and/or wanton actions and/or intentional failures to act caused between 17 and 30 million gallons of oil and oil products to be spilled, dispose5 of, or otherwise released into the ground, soil, groundwater, and aquifer on defendants' real property.

128.    Defendants' willful, wanton, and intentional failure to act and/or their affirmative choice of action and following course of action caused the oil and oil products to enter and trespass upon the land and realty of the plaintiffs and cause an injury to their possession and/or right of possession.

129.    Defendants took affirmative, voluntary, and intentional actions to store and/or transport oil and oil products in leaking or faulty containers and/or intentionally disposed of oil and oil products into the ground. Further, after such acts, defendants undertook affirmative, voluntary, and intentional acts that were insufficient to remedy the condition caused by the release of the oil and oil products.

130.    At the time that the above described affirmative, voluntary, and intentional acts were performed defendants had good reason to know or expect that the millions of gallons of oil and oil products would pass through the soil, groundwater, and aquifer from defendants' land to the land of plaintiffs and the neighboring properties.

131.    The above-described affirmative, voluntary, and intentional acts were performed with the willful intent to cause the oil and oil products to be disbursed through the soil, groundwater, and aquifer onto the land and property of plaintiffs and the neighboring properties.

132.    These voluntary actions resulted in the immediate and continued trespass, injury and damage to plaintiffs, their property and their right of possession of their property.

23

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 27 of 41 PageID #: 38

133.     Further, defendants' actions in disposing of massive amounts of oil and oil products into the ground were done with actual malice, and in wanton and willful and/or reckless disregard for plaintiffs' rights, health and property.

134.     Additionally and/or alternatively, defendants' decision to delay and resulting delay in taking any affirmative action to eliminate, correct, and/or remedy the contamination of the soil, groundwater, and aquifer on their properties after having knowledge and notice of said contamination were done with actual malice, and in wanton and willful and/or reckless disregard for plaintiffs' rights, health and property.

135.     Further, defendants' actions that were patently insufficient to eliminate, correct, and/or remedy the contamination after having knowledge and notice of said contamination were with actual malice and in wanton and willful and/or reckless disregard for plaintiffs' rights, health and property.

136.     Based upon the above, plaintiffs seek general damages from defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses sustained by plaintiffs and to restore plaintiffs to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injury to persons, consequential damages flowing from the trespass which are the natural and proximate result of defendants conduct, and exemplary or punitive damages.

**AS AND FOR A SIXTH CAUSE OF ACTION SOUNDING IN STRICT LIABILITY UNDER NAVIGATION LAW ARTICLE 12 AS TO DEFENDANTS EXXONMOBIL, BP, TEXACO, PEERLESS, AND DOES 1 THROUGH 100**

137.     Plaintiffs hereby repeat, reallege and reiterate each and every allegation in the paragraphs numbered 1 through 136 as if fully restated herein.

24

138.    Defendants EXXONMOBIL, BP, TEXACO, PEERLESS, and DOES 1-100 are and were persons who discharged, participated in actions constituting discharge, and/or are otherwise dischargers of petroleum as defined by New York Navigation Law Article 12.   Additionally, defendants are owners and/or operators of properties and/or facilities upon which petroleum was discharged.

139.    Defendants discharged petroleum and/or petroleum was discharged onto properties owned, leased, occupied and/or otherwise controlled by defendants.

140.    Defendants knew that oil and oil products were stored on their properties, and/or had reason to believe that oil and oil products were stored on their properties.

141.    Defendants also knew and/or had reason to believe that millions of gallons of oil and oil products were stored or situated in the form of the plume on and/or under their property. Defendants knew and/or had reason to believe that the oil and oil products on and under their properties were and are being released, leaking, spilling, and/or otherwise being emitted onto or into state lands, waters, and plaintiffs' properties and causing injury and damage. Said oil and oil products continue to be released and/or emitted onto and into state lands, waters, and plaintiffs' properties, causing injury and damage.

142.    As a result of defendants' discharge of petroleum onto and into state lands, waters, and plaintiffs' properties, plaintiffs and their properties have been injured and damaged and continue to suffer injury and damage.

143.    Based upon the above, plaintiffs seek general damages from defendants, in an amount to be determined at trial, directly resulting from their injuries in a sufficient amount to compensate them for the injuries and losses sustained by plaintiffs and to restore plaintiffs to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, stigma loss to property value, the cost of cleanup, removal,

25

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 29 of 41 PageID #: 40

repair, and/or restoration, the costs associated with cleanup and removal including testing, monitoring and interpretation of such tests, relocation costs, the, consequential damages flowing from discharge including attorneys' fees and costs, which are the natural and proximate result of defendants conduct, and exemplary or punitive damages. Upon information and belief, said amount exceeds the jurisdictional amounts of all of the lower courts.

**AS AND FOR A SEVENTH CAUSE OF ACTION
SOUNDING IN NEGLIGENCE AS TO DEFENDANT ROUX**

144.     Plaintiffs hereby repeat, reallege and reiterate each and every allegation in the paragraphs numbered 1 through 143 as if fully restated herein.

145.     Defendant ROUX failed to employ reasonable care which a reasonably prudent person should use under the circumstances while evaluating, remediating, containing, eliminating, and/or cleaning-up the oil and oil products.

146.     Defendant ROUX undertook, either by contract or gratuitously to evaluate, remediate, contain, eliminate, and/or clean-up the oil and oil products.

147.     Defendant ROUX owed plaintiffs a cognizable duty to exercise reasonable care in the evaluating, remediating, containing, eliminating, and/or cleaning-up the oil and oil products and the maintenance their tools and equipment used for such acts.

148.     Defendant ROUX failed to exercise that duty by failing to act reasonably in the evaluating, remediating, containing, eliminating, and/or cleaning-up the oil and oil products. More specifically, defendant ROUX has failed to perform adequate and appropriate testing in the appropriate locations, failed to create and implement a reasonable and adequate plan for evaluating, remediating, containing, eliminating and/or cleaning-up the oil and oil products, and/or failed to take

26

FILED: KINGS COUNTY CLERK 08/28/2020 11:39 AM INDEX NO. 516018/2020

NYSCEF DOC. NO. 1    Case 1:21-cv-05508-RPK-PK    Document 1-2    Filed 10/04/21    Page 30 of 41 PageID #: 41    RECEIVED NYSCEF: 08/28/2020

diligent action or took improper action and caused significant delay in the remediation of the oil and oil products.

149.    Plaintiffs suffered foreseeable injuries and damages as a proximate result of said failures. At the time defendant ROUX breached its duties to plaintiffs, defendant's acts and/or failures to act posed recognizable and foreseeable possibilities of danger to plaintiffs so apparent as to entitle plaintiffs to be protected against such actions or inactions.

150.    Accordingly, plaintiffs seek damages from defendant ROUX, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses sustained and to restore plaintiffs to their original position, including, but not limited to the difference between the current value of their properties and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injuries to persons, and consequential damages flowing from the trespass which are the natural and proximate result of defendant's conduct in an amount to be proved at trial.  Upon information and belief, said amount exceeds the jurisdictional limits of all of the lower courts.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### SOUNDING IN FEAR OF CANCER AS TO ALL DEFENDANTS

151.    Plaintiffs hereby repeat reallege and reiterate each and every allegation in the paragraphs numbered 1 through 150 as if fully restated herein, and further allege as follows on behalf of themselves and all others similarly situated.

152.    As a direct and proximate result of defendants' acts, omissions, and conduct as set forth above, plaintiffs have been exposed to hazardous substances and as a result have an increased risk of invisible genetic damages and have a fear of developing cancer.

153.    That the prospective consequences may with reasonable probability be expected to flow from the past harm.

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 31 of 41 PageID #: 42

154.    That plaintiffs will incur future expenses for medical monitoring and as a result seek future medical expenses as an element of the consequential damages.

155.    That the degree of probability of plaintiffs developing cancer(s) at a higher rate than might be expected in the general population is such that there is a reasonable certainty that such cancer(s) will develop, thus entitling plaintiffs to recover for apprehended consequences not presently manifested.

156.    That a rational basis exists between plaintiffs' exposure to the aforesaid toxins and contaminants that plaintiffs' fear of developing cancer in the future.

157.    That as a result of the foregoing, plaintiffs seek compensatory damages in a sum to be determined by a jury and seek punitive damages in a sum to be determined by a jury.  Upon information and belief, said amount exceeds the jurisdictional limits of all of the lower courts.

### AS AND FOR A NINTH CAUSE OF ACTION AS TO ALL DEFENDANTS MEDICAL AND ENVIRONMENTAL TESTING AND MONITORING

158.    Plaintiffs hereby repeat, reallege and reiterate each and every allegation in the paragraphs numbered 1 through 157 as if fully restated herein.

159.    As a direct and proximate result of defendants' acts, omissions, and conduct as set forth above, plaintiffs have been exposed to a hazardous substance and as a result suffer a significantly increased risk of contracting a serous injury or latent disease.  This increased risk makes periodic diagnostic medical examinations reasonably necessary.

160.    Early detection and diagnosis of these diseases is clinically invaluable since it can prevent, reduce and/or significantly delay resulting discomfort, suffering and/or death and since these conditions can often appear asymptomatic absent proper testing.

161.    Easily administered, cost-effective monitoring and testing procedures exist which make the early detection and treatment of such injuries or disease possible and beneficial.  For

28

Case 1:21-cv-05508-RPK-PK    Document 1-2    Filed 10/04/21    Page 32 of 41 PageID #: 43

example, administration of the several readily available non-invasive tests readily diagnoses the presence of liver failure, respiratory ailments and heart dysfunction, even in asymptomatic individuals. Early diagnosis of these diseases and conditions will allow prompt and effective treatment, which will reduce the risk of morbidity, and mortality, which these patients would suffer if treatment were delayed until their conditions became overly symptomatic.

162.    The recommended testing procedures will be subject to expert testimony at the time of class certification and/or trial. Appropriate testing regimes will likely include the following non-invasive, readily administrable initial tests and procedures: blood screen tests, pulmonary function tests and electrocardiograms.

163.    Many individuals at risk for respiratory injury have not been advised, and do not otherwise know, of the need to undergo testing. Class members also need to be advised of the availability of non-invasive testing as a diagnostic tool and treatment, which will prevent even more grave injury.

164.    The increased susceptibility to injuries and irreparable threat to the health of plaintiffs and other class members resulting from their exposure to these hazardous substances and chemicals can only be mitigated or addressed by the creation of a medical monitoring fund to provide for a medical monitoring programs including:

a) Notifying persons who worked at the premises and rescue recovery sites of the potential harm from exposure to toxicants at the site.

b) Funding further studies of the long term effects of exposure.

c) Funding research into possible cures for the detrimental effects of breathing and working with the toxicants at the site.

d) Gathering and forwarding to treating physicians information related to the diagnosis and treatment of injuries which result from the exposure.

e) Aiding in the early diagnosis and treatment of resulting injuries through ongoing testing and monitoring of plaintiffs.

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 33 of 41 PageID #: 44

## AS AND FOR A TENTH CAUSE OF ACTION: ABNORMALLY DANGEROUS ACTIVITY AND ABSOLUTE AND STRICT LIABILITY

165.    Plaintiffs hereby repeat, reallege and reiterate each and every allegation in the paragraphs numbered 1 through 164 as if fully restated herein.

166.    Defendants' aforesaid failure to  employ reasonable care which a reasonably prudent person should use under the circumstances by storing, transporting, disposing of, or otherwise releasing into the ground between 17 and 30 million gallons of oil and oil products constituted ultra-hazardous and abnormally dangerous activities involving ultra-hazardous, abnormally dangerous substances.

167.    Defendants allowed or caused these ultra-hazardous and abnormally dangerous substances to leach into the surrounding land and ground water, and in doing so, failed to warn plaintiffs of the dangerous condition that was caused thereby.

168.    The risk of such activities outweighs any value associated with same. As the result of the said ultra-hazardous and abnormally dangerous activities, plaintiffs have suffered damages and imminent, substantial and impending harm to their health, their families, to the value of their homes and rental properties, and plaintiffs have expended or will be forced to expend significant resources to safeguard their health and their property, obtaining monitoring, testing, remediating services or equipment, as well as health monitoring, indefinitely for years and decades into the future.

169.    As a result, the contaminated land and ground water will act as a continuous source of danger to these plaintiffs for many years.

170.    By reason of the foregoing, Defendants are strictly liable in tort for the damages sustained by the plaintiffs.

Case 1:21-cv-05508-RPK-PK    Document 1-2    Filed 10/04/21    Page 34 of 41 PageID #: 45

171.    As a result of the foregoing, plaintiffs seek compensatory damages in a sum to be determined by a jury and seek punitive damages in a sum to be determined by a jury.  Upon information and belief, said amount exceeds the jurisdictional limits of all of the lower courts.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION: DECEPTIVE BUSINESS ACTS AND PRACTICES IN VIOLATION OF GENERAL BUSINESS LAW § 349 AS TO DEFENDANTS EXXONMOBIL, BP, PEERLESS AND DOES 1-100

172.    Plaintiffs hereby repeat, reallege and reiterate each and every allegation in the paragraphs numbered 1 through 171 as if fully restated herein.

173.    Defendants are engaged in the business of refining and storage of oil and petroleum products in the State of New York.

174.    Defendants engaged in materially deceptive and misleading acts and practices in the refining and storage of oil and petroleum products, including but not limited to:

a.    representing that their business practices in refining and storage of oil and petroleum products did not pose an unusual threat to land and groundwater contamination in the areas surrounding their facilities;

b.    leading the public to believe that the oil and petroleum products they were refining and storing was safely contained during transport, storage and use;

c.    failing to disclose the fact of and extent of the contamination caused by their negligent release of oil and petroleum products into the land and groundwater surrounding their facilities;

d.    concealing the necessity for the land and groundwater in the areas surrounding their facilities to be regularly tested for early detection of contamination by oil and petroleum products.

175.    Defendants' materially deceptive and misleading practices proximately caused and continue to cause plaintiffs to incur damages including expending significant resources to test, monitor and remediate the contamination of their property and to test and monitor their health for untoward effects thereupon that may have occurred or may yet develop as a proximate result of the

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 35 of 41 PageID #: 46

defendants' actions and omissions. Plaintiffs are thus entitled to recover damages from defendants pursuant to GBL § 349.

**WHEREFORE,** plaintiffs demand judgment against defendants **EXXONMOBIL OIL CORPORATION, BP PRODUCTS NORTH AMERICA, INC., CHEVRONTEXACO, INC., PEERLESS IMPORTS INC., ROUX ASSOCIATES INC. and JOHN and JANE DOES 1 through 100 as follows:**

I.    **AS AND FOR PLAINTIFFS' FIRST CAUSE OF ACTION SOUNDING IN NEGLIGENCE,** each plaintiff seeks general damages from defendants, in an amount to be determined at trial, directly resulting from their injuries in a sufficient amount to compensate them for the injuries and losses sustained and to restore plaintiffs to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and consequential damages flowing from the trespass which are the natural and proximate result of defendants' conduct in the amount of TWENTY-FIVE MILLION DOLLARS ($25,000,000.00).

II.    **AS AND FOR PLAINTIFFS' SECOND CAUSE OF ACTION SOUNDING IN NEGLIGENCE PER SE,** each plaintiff seeks general damages from defendants, in an amount to be determined at trial, directly resulting from their injuries in a sufficient amount to compensate them for the injuries and losses sustained and to restore plaintiffs to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and consequential damages flowing from the trespass which are the natural and proximate result of defendants' conduct in the amount of TWENTY-FIVE MILLION DOLLARS ($25,000,000.00).

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 36 of 41 PageID #: 47

III.    **AS AND FOR PLAINTIFFS' THIRD CAUSE OF ACTION SOUNDING IN NUISANCE**, plaintiffs seek general damages from defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses sustained by plaintiffs and to restore plaintiffs to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and direct and consequential damages flowing from the nuisance and trespass which are the natural and proximate result of defendants conduct in the amount of TWENTY-FIVE MILLION DOLLARS ($25,000,000.00).

IV.    **AS AND FOR PLAINTIFFS' FOURTH CAUSE OF ACTION SOUNDING IN PREMISES LIABILITY**, plaintiffs seek general damages from defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses sustained, and to restore plaintiffs to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and the direct and consequential damages flowing from the trespass and resulting condition which are the natural and proximate result of defendants conduct in the amount of ONE BILLION DOLLARS ($1,000,000,000.00).

V.    **AS AND FOR PLAINTIFFS' FIFTH CAUSE OF ACTION SOUNDING IN TRESPASS,** plaintiffs seek general damages from defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses sustained by plaintiffs and to restore plaintiffs to their original position, including, but not limited to the difference between the current value of the land and such value if

33

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 37 of 41 PageID #: 48

the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, consequential damages flowing from the trespass which are the natural and proximate result of defendants' conduct, in the amount of TWENTY-FIVE MILLION DOLLARS ($25,000,000.00).

VI.    **AS AND FOR PLAINTIFFS' SIXTH CAUSE OF ACTION BASED UPON NEW YORK NAVIGATION LAW,** plaintiffs seek general damages from defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses sustained by plaintiffs and to restore plaintiffs to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, stigma loss to property value, the cost of cleanup, removal, repair, and/or restoration, the costs associated with cleanup and removal including testing, monitoring and interpretation of such tests, relocation costs, the, consequential damages flowing from discharge including attorneys' fees and costs, which are the natural and proximate result of defendants' conduct, and exemplary or punitive damages in the amount of ONE BILLION DOLLARS ($1,000,000,000.00).

VII.    **AS AND FOR PLAINTIFFS' SEVENTH CAUSE OF ACTION SOUNDING IN NEGLIGENCE,** plaintiffs seek general damages from defendant ROUX for the damages directly resulting from their injuries and losses sustained and to restore plaintiffs to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and consequential damages flowing from the trespass which are the natural and proximate result of defendant's conduct in the amount of TWENTY-FIVE MILLION DOLLARS ($25,000,000.00).

34

VIII.   **AS AND FOR PLAINTIFFS' EIGHTH CAUSE OF ACTION FOR PLAINTIFFS' FEAR OF DEVELOPING CANCER** directly resulting from the defendants' acts and omissions alleged herein, for the plaintiffs' injuries and losses sustained and to restore plaintiffs to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and consequential damages flowing from the trespass which are the natural and proximate result of defendants' conduct in the amount of TWENTY-FIVE MILLION DOLLARS ($25,000,000.00).

IX.   **AS AND FOR PLAINTIFFS' NINTH CAUSE OF ACTION SEEKING A FUND TO COVER THE COSTS AND EXPENSES OF MEDICAL AND ENVIRONMENTAL MONITORING** for all plaintiffs and their real property affected by the defendants' negligence and other tortious acts alleged, plaintiffs seek an order of this Court requiring defendants and each of them to contribute to a fund sufficient to cover the costs and expenses of a program for medical and environmental monitoring for each and every of the plaintiffs herein, but in any case, SUCH FUND SHOULD NOT BE LESS THAN ONE BILLION DOLLARS ($1,000,000,000.00).

X.   **AS AND FOR PLAINTIFFS' COMBINED CLAIMS ON EACH OF THE FOREGOING CAUSES OF ACTION,** all of which flow directly as a result of the wanton, willful and reckless conduct of the defendants and each of the defendants herein, plaintiffs seek exemplary or punitive damages in addition to the compensatory damages set forth, *supra*, in an amount not less than FIFTY BILLION DOLLARS ($50,000,000,000.00).

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 39 of 41 PageID #: 50

XI.     Preliminary and permanent injunctions to pay money into a fund sufficient to clean and remediate the contamination that the defendants caused to be discharged on, in and/or around plaintiffs' property;

XII.     An Order mandating that the defendants, and each of them, and their successors and assigns, take every action necessary to assure that all relief requested herein is obtained and fully funded;

XIII.     Award plaintiffs the costs of this lawsuit, including but not limited to attorneys' fees and expert costs.

XIV.     Awarding plaintiffs such other, further, and different relief as the Court may deem appropriate and just.

Dated: New York, New York
      August 27, 2020

_____
Leigh Bernstein

Case 1:21-cv-05508-RPK-PK   Document 1-2   Filed 10/04/21   Page 40 of 41 PageID #: 51

## VERIFICATION

I, **LEIGH BERNSTEIN,** am an attorney duly admitted to practice law in the Courts of this State, and I affirm the following under penalties of perjury:

I am the attorney for the plaintiffs in the above entitled-action.  I have read the foregoing **SUMMONS & VERIFIED COMPLAINT** and know the contents thereof, and upon information and belief, affirmant believes after an inquiry reasonable under the circumstances the matters alleged herein to be true, and that the contentions herein are not frivolous, as that term is defined in 22 NYCRR § 130-1.1(c).

The reason this verification is made by affirmant and not by plaintiffs is that the plaintiffs herein reside in a County other than the County in which I maintain my offices.

 The source of affirmant's information and the grounds of his belief are communications, papers, reports and investigations contained in the file maintained by this office.

Dated: New York, New York
       August 27, 2020

**LEIGH BERNSTEIN**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

CHRISTINA AURIEMMA and THERESA EISENBACH,

*Plaintiffs,*

-against -

EXXONMOBIL CORPORATION, BP PRODUCTS NORTH
AMERICA INC., TEXACO INC., PEERLESS IMPORTS INC.,
ROUX ASSOCIATES INC. and JOHN and JANE DOES 1
through 100,

*Defendants.*

Index No. _____

========================================================================

SUMMONS AND VERIFIED COMPLAINT

========================================================================

**MARC J. BERN & ASSOCIATES, LLP**

*Attorneys for Plaintiffs*
60 East 42nd Street, Suite 950
New York, New York 10165
(212) 702-5000

========================================================================

The undersigned attorney certifies pursuant to 22 NYCRR §130-1.1-a that he has read the within papers and that, to the best of his knowledge, they are not frivolous as that term is defined in 22 NYCRR §130-1.1(c).

_____
LEIGH BERNSTEIN